### McGLOTHLIN v. GREGORY. (No. 9182.)*

(Court of Civil Appeals of Texas. Dallas. Nov. 22, 1924. Rehearing Denied Jan. 10, 1925.)

1. Appeal and error ⚖➝1001(1)—Verdict supported by sufficient evidence not disturbed.

The Court of Civil Appeals cannot disturb verdict, where there is sufficient evidence on which to predicate jury's findings.

2. New trial ⚖➝104(2)—New evidence held cumulative.

Alleged newly discovered evidence as to location of boundary lines and corners held cumulative.

3. New trial ⚖➝102(3)—Diligence in procuring evidence alleged to be newly discovered not shown.

That witness whose testimony as to boundaries was relied on as newly discovered had maintained office in Fort Worth for several years, and was partner to affiant making affidavit, and maintained same office with latter, and that suit had been pending since 1916, held to show absence of diligence required to discover facts.

4. Appeal and error ⚖➝1072—Alleged newly discovered evidence not cause for reversal in view of finding for plaintiff under ten-year limitation.

Assuming newly discovered testimony as to location of boundary to be material and not cumulative and defendant to have exercised due diligence, reversal of judgment would not be justified where jury found for plaintiff under ten-year limitation.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Trespass to try title by W. L. Gregory against W. P. McGlothlin and another. Judgment for plaintiff, and defendant named appeals. Affirmed.

William R. Booth and C. E. Coolidge, both of Fort Worth, and George A. Titterington, of Dallas (W. F. Kelly, of Fort Worth, on rehearing), for appellant.

Clint & Eades, of Dallas, for appellee.

VAUGHAN, J. This suit was filed by the appellee as plaintiff below against appellant McGlothlin and one Edward Loke, as defendants in trespass to try title to the following described tract of land:

"Lying and being situated in Dallas county, Texas, beginning at the N. E. corner of a certain 40-acre tract of land heretofore conveyed to L. Garhart by deed dated November 6, 1874, of record in Volume V, page 607, of the deed records of Dallas county, Texas, which point is the S. E. corner of a 40-acre tract of land conveyed to A. R. Slater by W. E. Lusk and wife, by deed dated November 13, 1911, of record in Volume 540, page 15, of the deed records of Dallas county, Texas; thence west to stake in the east line of the Dallas and Birdville public road; thence north along the east line of said Dallas and Birdville public road 475 varas to stake for corner; thence east to the N. E. corner of said 40-acre tract conveyed to A. R. Slater by deed recorded in Volume 540, page 15, deed records of Dallas county, Texas, aforesaid; thence south 475 varas to the place of beginning."

Appellee, in addition to the facts necessary in a suit of trespass to try title, pleaded the five and ten year statutes of limitation. Appellant and his codefendant answered by second amended original answer disclaiming as to all land described in appellee's petition, except as such description might cover the following described four acres out of the P. R. Splain survey in Dallas county, Tex.:

"Beginning at the W. B. line of the J. C. Reed survey 5,935 feet north 2¾ west of the northwest corner of the J. R. Baugh survey, said beginning point being at the northwest corner of a 40-acre tract of land deeded to L. Garhart, as shown by deed to said Garhart re-

corded in Volume V, page 607, deed records of Dallas county, Texas; thence north 2¾ west 475 varas to the northwest corner of 40 acres once belonging to the plaintiff herein; thence west 96 feet to the Dallas and Birdville public road; thence south 475 varas to a point immediately west of the beginning; thence east 134 feet to the beginning, containing 4 acres."

As to said four acres described, they pleaded not guilty, and, further, by way of cross-action against appellee in trespass to try title to the four acres described in their answer, pleaded, in addition to the usual and required facts in such an action, the five and ten year statutes of limitation, the rental value of said premises to be the sum of $80 a year, and prayed for judgment quieting title to said four acres in them and for their rent and damages.

Appellee duly answered said cross-action by way of his first supplemental petition, pleading general denial, not guilty, and, further, that if the four-acre tract of land described in said cross-action, or any part thereof, was included in and covered by the description of the land sued for by appellee, which was denied, that same lay along the east side of the Dallas and Birdville public road and would embrace the front portion of the tract of land sued for, and that as to the said four acres sued for by appellant and his codefendant, or such portion of same as did lie east of the Dallas and Birdville public road, he pleaded the five and ten year statutes of limitation.

On the trial of the case appellee abandoned his plea of five-year statute of limitation, and appellant and his codefendant abandoned their plea of five and ten year statutes of limitation. Issue was joined between litigants as to the location of the west boundary line of the J. C. Reed survey, same being the east boundary line of the four-acre tract out of the P. R. Splain survey sued for by appellant and his codefendant, and, further, on appellee's plea of the ten-year statute of limitation.

At the commencement of the trial it was agreed by the parties litigant, in open court, that the appellee had a good title to all of the land involved in this suit lying east of the west boundary line of the J. C. Reed survey; that if the land in question is a part of the J. C. Reed survey, appellee had a good title thereto. It was admitted by appellant and his codefendant that appellee and his predecessors in title had held continuous and peaceable possession of the property in controversy for more than 10 years, but they denied that the same was claimed adversely. The four-acre tract in controversy is out of the front or west end of the land sued for and lies along the east line of the public road. The dwelling house, well, barn, and other improvements other than fences, are situated upon this four-acre tract. Appellant McGlothlin owned land south of the

Gregory tract and his mother owned land north of this tract. Appellee purchased the property in controversy in 1916, and rented same to one J. M. Welch, who, upon attempting to take possession and move in, and after he had placed a part of his household goods in the dwelling, was forcibly ejected from said premises by appellant and was prevented from taking possession of the same.

The issues to be determined upon the trial were: (1) Of what survey is the land in controversy a part; that is, whether the same, or any part thereof, is out of the P. R. Splain survey? (2) Whether the land in controversy was claimed adversely for a period of 10 years by appellee and those under whom he claimed title thereto. In order to determine the first question, it was necessary to ascertain the location of the west boundary line of the J. C. Reed survey with reference to the land in question, which would also determine the east boundary line of the Splain survey.

The case was submitted to the jury upon special issues, and, upon the findings of the jury, undisputed evidence, and admissions of the appellant and his codefendant, judgment was entered in favor of appellee for the land in controversy, from which this appeal has been prosecuted by appellant McGlothlin, alone; the issues so submitted and the answers of the jury thereto being as follows:

"Issue No. 1. Is the northwest corner of the J. R. Baugh, survey, as originally established, situated at a point due south of the southwest corner of the Chilton Smith survey, as originally established; or, is the northwest corner of the J. R. Baugh survey, as originally established, situated at a point east of the point found by a due south line from the Chilton Smith southwest corner and the place where Surveyor Archer testified that he, Strong and Goodfellow, placed the rock in the road? Answer: Yes, we find original corner to be established at a point due south of the southwest corner of the Chilton Smith survey as originally established and is located at a point due west of rock as located in road.

"Issue No. 2. If a straight line is run due north from the northwest corner of the J. R. Baugh survey, as originally located, would said line strike the southwest corner of the Chilton Smith survey, as originally located, or would it strike the south boundary line of said survey east of its southwest corner? Answer: Yes, as originally located.

"Issue No. 3. State whether or not you find from the evidence that the defendant W. P. McGlothlin and E. M. Storey, through whom plaintiff claims, entered into an agreement during the time E. M. Storey was in possession of said property, to locate the dividing line between said Reed and Splain surveys. Answer: No.

"Issue No. 4. You are told that the defendants admit that the plaintiff has been in continuous and peaceable possession of the land in controversy, either by his own occupancy or by those under whom he claims, for the period of more than ten years, and in this

connection you will answer the following issues:

"Issue No. 5. State whether or not E. M. Storey, while in possession of said four acres, continuously claimed the same adversely to W. P. McGlothlin, the defendant herein. Answer: Yes.

"Issue No. 6. State whether or not —— Mitchell, while in possession of said four acres, continuously claimed the same adversely to W. P. McGlothlin, the defendant herein. Answer: Yes.

"Issue No. 7. State whether or not W. E. Lusk, while in possession of said four acres, continuously claimed the same adversely to W. P. McGlothlin, the defendant herein. Answer: Yes."

[1] The sufficiency of the evidence to sustain the findings of the jury is earnestly and with much force challenged by appellant. Therefore we have carefully examined the statement of facts in order to determine the merit of the many assignments challenging the verdict of the jury in that respect. As revealed by the statement of facts, a different conclusion on most of the issues could have been reached and found support in the evidence sufficient to have been sustained. This, however, cannot aid in sustaining appellant's attack on the findings of the jury, unless same are not only contrary to a great preponderance of the evidence, but, in fact, without evidence in support thereof. We are of the opinion that not only are the findings supported by evidence sufficient to sustain the jury in reaching the conclusions reflected by its answers to the several issues submitted, but that same are in response to the preponderance of the evidence in favor of such conclusions. Therefore, we are bound by said findings, as this court is not at liberty to disturb the verdict of a jury where there is sufficient evidence upon which to predicate its findings; same, under such circumstances, being a conclusion reached in the exercise of their prerogative in determining the weight to be given to the evidence.

We find the following material facts to have been established by the evidence adduced on the trial of this cause, to wit: The facts found by the answers of the jury to the special issues submitted to them, and the following from the uncontroverted evidence so introduced: That the true west boundary line of the J. C. Reed survey and the east boundary line of the P. R. Splain survey is a straight line running from the northwest corner of the J. R. Baugh survey as originally located and established, to the southwest corner of the Chilton Smith survey as originally located and established, and that the land described in appellee's first amended original petition and sued for lies entirely east of the line running south from the said southwest corner of said Chilton Smith survey as originally established; that appellant and his codefendant disclaimed any interest

in the land sued for, except the four-acre tract described in their second amended original answer, as being a part of the Peyton R. Splain survey, and that they claim no interest in any part of the land in controversy except such portion as might be a part of said Splain survey, and that parties litigant agreed that, if the land described in appellee's first amended original petition is a part of and located wholly within the J. C. Reed survey, appellee is the owner thereof; that the four acres involved in this litigation is a part of and wholly within the J. C. Reed survey, and that appellee and those under whom he claims title have had peaceable and adverse possession thereof for more than 10 years prior to the institution of this suit.

Appellant by his second proposition earnestly contends that a new trial should have been granted him on the ground of newly discovered evidence as presented by the eighth ground of his motion for new trial, to wit:

"That since trial of this case defendant McGlothlin has discovered that J. J. Goodfellow is alive and that his testimony will be valuable if a new trial is granted herein and he (Goodfellow) will testify that the true and actual northwest corner of the southwest corner of the Reed survey is at the stone testified to by witness Archer, and the line run from the true and actual northwest corner of the Baugh to the southwest corner of the Chilton has a course north 2½ degrees west; that the defendant had been and at the time of the first trial hereof was informed that J. J. Goodfellow was dead, and counsel for defendant herein were informed that the said J. J. Goodfellow was dead and so stated and urged on the trial of this cause."

The above is supported by affidavits executed by appellant McGlothlin and one Brooks Baker, viz.: By appellant to the effect that prior to the trial of this cause in the court below he did not know of one Geo. N. Williams or the information possessed by affiant Brooks Baker, and did not know that they were aware of the facts outlined in said Baker's affidavit attached to his motion for new trial until after the verdict had been returned in this cause; and by Brooks Baker to the effect that he is a surveyor, had lived in Tarrant county for 21 years, and engaged in the survey of land during that time; that he maintained an office, which was established in 1880 by one J. J. Goodfellow, who, with his partner Geo. N. Williams, was the county surveyor or deputy county surveyor during the following 15 or 18 years, and Mr. Goodfellow continued as county surveyor until 1908, with the exception of one year; that said Goodfellow and affiant were partners from 1902 to 1908, at which time affiant took over the business and continued it in his own name; that in affiant's office are notebooks covering the daily work of surveys from 1880 up to 1908 and his own work

since that time; that the records of affiant's office embrace the daily notebooks used by the surveyors in their field work, giving records of the original corners found, the true course and distance between them, and innumerable data accumulated during the 40-odd years just past; that in a notebook dated 1892 are the notes of the survey made by said Williams locating the west line of the J. C. Reed survey, and, among the calls giving the survey as made by him, are the following:

"He then went to the S. E. corner of the J. C. Reed survey, found the witness tree gone; he ran west 965 vrs. to a stone, in all 1,082¾ vrs. to intersect line running south from the southwest corner of the Chilton Smith survey."

And the further call:

"Thence north at 115 vrs., the west fork of the Trinity river, in all 681 vrs., was 2 vrs. west of the stone for the northeast corner of the Baugh survey."

Chas. Archer, surveyor, testified as a witness in appellant's behalf, in reference to the rock referred to in the affidavit of Baker, as follows:

"That at the time they put a rock in the road at a point north of the southwest corner of the Baugh survey for the beginning corner, which rock corner is south 2¾ degrees east of the original northwest corner of the Chilton Smith survey; that he knew where the northwest corner of the Reed survey was; that the northwest corner of the Reed is the southwest corner of the Smith survey, and that the same is in the road; that the recognized corner of the Baugh was west of the corner we took for years and years. There used to be a rock in the road leading to a mill out there on the west ford of the river. The rock from which I ran this angle line is east of the corner where I found the Baugh survey. Years ago there was a rock west of this rock I speak about, and from that rock there was a fence running south. From the rock that I started the angle line on there was no fence running south, and never was, but was right across the field."

He further testified that said angle line was surveyed by himself and Mr. Goodfellow.

[2] In support of this ground of his motion, appellant did not furnish any statement or affidavit from either Goodfellow or Williams so as to advise the court in no uncertain terms that such alleged newly discovered evidence rested with and would be testi-fied to by Goodfellow. As presented, it was merely a matter of speculation or belief, founded upon hearsay statements as to what said Goodfellow or Williams would testify in reference to the facts, to establish which the alleged newly discovered evidence was desired. Appellant, in his motion, gave no reason or explanation why the affidavit setting forth what these parties would swear to was not signed and sworn to by them, respectively. He does not even give the residence of the witness Williams, unless it can be inferred from the facts stated that he is still a resident of Fort Worth. Furthermore, it is very apparent that the alleged newly discovered testimony would be but cumulative, the facts in reference to which same related having been testified to by the witness Archer as above demonstrated.

[3, 4] Appellant not only failed to show diligence on his part to procure the now desired evidence, but the affidavits in support of his motion on their face show the want of diligence. The fact that Goodfellow was the county surveyor of Tarrant county for a number of years, and that he maintained his office in the city of Fort Worth, and that he was a partner with Williams and Surveyor Brooks Baker, and that Baker now maintains the same office, and the fact that this suit had been pending since 1916, can only lead to the conclusion that, had appellant exercised that degree of diligence required by law, he would have, had he desired so to do, discovered the facts about these parties that he now claims to know. We might assume that Goodfellow would testify as claimed by appellant, and that the same would be material and not cumulative, and that appellant had exercised due diligence; still, that would not justify a reversal of the judgment because the jury found that appellee was entitled to the property under the ten-year statute of limitation, as well as being the owner of the record title thereto, and it would make no difference what the testimony might show with reference to the location of the Baugh corner or the west line of the Reed survey, in so far as appellee's rights are concerned, because the jury found, under sufficient evidence in answer to proper special issues submitted, that appellee had owned, claimed, and held the land for more than 10 years adversely to the appellant.

The record not disclosing any reversible error, the judgment of the court below is accordingly affirmed.

Affirmed.